Court of Appeals for the Sixth Circuit if you represent the appellant even if you've settled up well I see that the clerk has conveniently written on my sheet that you're taking five minutes okay all right you may proceed oh the clerk needs to call the case good afternoon may it please the court my name is Richard Brophy I'm counsel for the consortium of horse racing venues that are the plaintiff and appellant in this case and I think we just discussed I'll be reserving five minutes if it's all right with you for a rebuttal argument can you keep your voice up yes ma'am thank you just like Apple provides computers and phones and just like H&R Block provides consulting services so too do my clients provide horse races it is the business that they are in and customers of my clients access that those products and services in a number of ways I think the most obvious of those is when you actually show up to one of these horse racing venues and you witness those horse races taking place in front of your eyes but that's not the only way that you can gain access to those products and services for example you can also go to an off-site betting facility who has licensed the video the real-time video of those races to be displayed at those off-site betting tracks and so customers can go to those off-site betting locations and view the video in real time to wager on those games more recently there's been a third way in which customers can gain access to these types of races and and and and videos and other materials and that is by what we're calling historic horse racing systems these are a new way of wagering on horse races that involve showing to a customer an anonymized set of information about a race that's taken place in the past and allowing a patron to wager on those anonymized facts to decide which horse they think is going to win that race and then after the wager is placed to reveal the results of that race so that the patron understands whether they won or lost that wager but also to legitimize the results of that wager so the patron doesn't feel that the computer has just taken their money but there's a legitimate reason why they won or lost the reason we're here today is because there's now a fourth a fourth issue a fourth way in which these patrons are able to wage run horse races and that is through the defendants system this exact a gaming system and unlike all the other ways that I've described already in this argument in that fourth way they do not gain access to the videos that my clients provide they do not gain access to the actual races that my client provides what exact it does is rather than license the actual video from my clients they fabricate their own videos and they put my clients trade names on those videos that is the reason that we are here today that is the reason that we filed in the third way you're protected through licensing you're protected through copyright right we're protecting a number of ways certainly we have copyrights in the video itself but in addition to that the trade names that that exist for all of our horse racing venues are shown or depicted with that video they're on the video and the licensing between the gaming company that shows those videos and the horse racing tracks licenses all that intellectual property including the trademarks which designate the origin of that race the source of that race which is of course what the trademark is designed to do so to answer your question your honor the fourth the fourth way the one that you're challenging when you see this you're saying it's a reenactment meant to look like a real video that's correct what is done in that fourth instance is rather than all the other ways which is you're actually seeing the horses the real horses whether it's in a live broadcast or a recording that's replayed this fourth way the exact away is a computer generated video like a video game that shows horses trotting down the track towards the finish I guess that's my point I mean no one confuses that with the real race or do they are you claiming that the claim that we are making is that the consumer is confused as to where that race came from did our clients generate that computer video did our clients generate the underlying data that drives that video are our clients sponsoring or otherwise affiliated in some way with this because up until now all consumers who have access to these types of materials have seen a real video with a name of that venue put on top but are you saying is there are you saying that the public is confused regarding whether this is actual video of a race conducted at one of your clients venues or are you saying that they're confused they know it's simulated video but they're confused as to who's behind it it's the latter of those two your honor okay we're not taking the position that there's a confusion about the computer generated video being so good that it looks real. I have a couple of questions in regard to that. Does the exact name appear in the customer's experience in embedding does the exact name or logo appear anywhere? I believe the answer to that is yes your honor and the concern more importantly for us is even though I don't think there's any dispute that when someone uses the system the question is what about constituent parts of that system the video that's driving it the data that's driving it this is this is these are real races that are being described and bet upon right well that's part of the issue your honor is we don't know whether these these video recreate recreations are accurate or not we've had no way to vet them we don't know they're being represented they purport to be uh real races that have been run at these various tracks correct that's correct your honor all right how does this use differ from let's say somebody writes a story in a newspaper and says his the historical fact that this race occurred at your particular venue and that seems to be I mean this is this wagering experience merely describes where the historical event the race occurred why is it more than that sure great question I think there are two reasons number one it's not just that they're saying a race happened they're coupling it with an actual reenactment of that race they're saying this is the the race that was produced by this company oaklawn churchill downs this is the race that happened there so they're attaching they're not just reporting a score is there anything about these simulated races that would make somebody think they're the real race a real video of the real race no your honor no it's all about whether this computer generated information this video is being provided by a horse racing track which is traditionally where this product comes from or whether it's being provided by exacta I feel like I'm being dense because I don't understand I don't understand really the underlying motivations for this litigation I would assume there's a sort of a racing fan who enjoys going to these particular race tracks and I would assume it's like the fan who likes to list how many baseball fields he's seeing particularly you know Fenway Park whatever and I assume that that you know there's a similarity there I would think it would be to the advantage of the track owners to have the historical fact about where these races occurred to have the public become more familiar with the venues where these actual races the actual race occurred but yet you all seem to think that you're caused damage by having your name used in this way your trademark name used in this way and I don't get it would seem to me that this might well be a benefit to your clients well I think the problem here your honor is normally we are we form relationships with these companies and we license our our trade name to them and we partner with them in a way that from a trademark perspective allows us to control the quality of the product that we're putting out here our name is being applied but we have no access to the video we have no way to determine that it's accurate we have no way of controlling how it's being presented what about the reality that at the point of purchase your clients names are not being used there there there there are many different ways in which trademark infringement can take place and yeah but I mean it's just the normal point is at the point of sale something is misleading and the nature of this is to bet first find out later where this race was run and then I guess see the video reenact well well the video with our trade name is shown when they take your money when they actually decide you've lost your wager and they're going to take your money that's when they show our name well at that point you don't have any control you're already you already I mean you're there you're going to lose your money but legitimizing that but it's also in the brochure isn't it it's also in the marketing materials yes that's correct well and and you know people bet at your racetrack too right that's correct your honor yes so how does it mislead people to suggest that there or why is it confusing that you know yes you bet your horse doesn't win you're gonna lose or at least I don't I don't know anything about horse racing but I think depending on how your your horse places you could not totally lose sure if I could answer that maybe succinctly I would say trademark law is designed to protect more than confusion as to whether the system as a whole is our system or exact a system there are any number of ways in which trademark law protects designation of source and source can include where the product as a whole is coming from where constituent parts of that product are coming from or whether it's an issue what would happen to this case if all you have is we're going to give you the you don't know the horses you don't know where the race is all you know is their statistics and how much they've won it's a through h or whatever you bet and when it's over you just hear the results and the track at which it was so you know you can check to make sure that was the results at that track would they be displaying our our trade names in that process it looks you know it looks just it looks just like this except you don't see the whole race you just see the final tally who came in first through eighth you see this video obviously not real view of the track but video but it's a track with horses just standing still they're not moving and then you have the name of the track where it happened in the day and so forth would you have a claim then we would here's why I'm sorry what's the I thought the part of the experience here was also this quote quasi reenactment yes so you don't have that little video at the end well it's a minute and a half or whatever it's a very short video but I your honor's question is what happens if we remove the video and just say here's the score here's the result yeah in the sixth circuit and I think this circuit does it properly when you when you have a case in which one company is using another's trade name to refer to that other which is what we have here normally shouldn't say normally in other circuits like the ninth circuit that's considered potentially a nominative fair use and so there's a question about whether you satisfy these separate elements for a nominative fair use in the sixth circuit this circuit says we're not going to look at nominative fair use instead we're going to conduct a likelihood of confusion analysis to determine whether that use of the third party's trade name as an identifier for source so it's a trademark use constitutes a confusion a confusing use as the consumers would see it because after all that's really the whole point of all this and so you would say not much risk of confusion what we would say is we need to do that evaluation and just I understand I'm way out of time but to leave to leave this thought actually I'm sorry um judge Sutton's question yes I'm sorry what's the potential risk of confusion at that point I don't I don't get it I mean you you're betting on a anonymous race and because you like to bet and then you find out the results and you have to have some way of measuring whether it's accurate which requires date and track the the question is not from our perspective the question is whether the consumers the appropriate consumer base is confused and I think one of the things that I would say your honor I agree with you by the way that as you remove pieces you remove the video it gets to be a harder trademark infringement case I don't think there's any question about that but but the point of the likelihood of confusion analysis is to step into the shoes of that consumer and see whether under the circumstances they are confused or not and the point I would make here is this case was resolved at rule 12 that analysis has never been performed so for example one issue that that I think is an important one here is up until the use of the exacta system every consumer who wagered in these types of situations always saw a race which was the product of my client's venues every single race they ever saw ever came from my client's venues and now those same consumers with that contextual background are being presented with an animation of a race just like the real ones they used to see with a trade name on it now they're seeing an animation of a race except we didn't produce that race anymore it's been produced by someone else and our trade names being put on it and so one of the questions is a consumer with that background having seen and dealt with a particular repeated pattern of a product coming from my clients with our name on it in a certain package now the package is the same but the product is different so it's like the bumblebee tuna case right where you're allowed to say we've got bumblebee tuna in our product we make a tuna salad we can say we have bumblebee tuna in it we're referring to that third-party trademark that third-party company but we're saying we have bumblebee tuna in it it's like that case except the tuna isn't bumblebee tuna the race isn't our race it's something that's been fabricated by the exacta systems company and it is not ours but our trade name is being slapped on it well okay i i just have a few questions first of all where do where does this program this exacta program where do people interact with this there are a number of places i my understanding is that right now uh the only place that it exists is at the kentucky downs horse racing track so you can go outside and see an actual horse race or if there are no horse races taking place you can go inside and wager on these electronic machines okay so it's actually taking place in the type of venue that formerly had the video so at the same venue you actually can do live racing you can do simulcast video wagering and you can do this electronic wagering so again everything else that they've dealt with so far the source of that racing okay is from the venue all right so now what if instead of saying churchill downs it said louisville that's just fine okay because that's a that's a geographic identifier one of the one of the points i i sadly didn't get a chance to make is in this case unlike many of the other cases that are cited in the briefing we do not have trademarks that have two meanings so apple is a perfect example apple's a fruit apple is also a company that makes laptops the non-trademark use cases are cases in which you're saying i've got a bushel of apples there is no non-trademark use for oaklawn before oaklawn was a trade name it wasn't anything if i well it's not it doesn't have another meaning correct whether there's a non-trademark use is really this case but in any event um now you've made the point that heretofore whatever they've watched that's been uh something other than live has been the product of one of your plaintiffs in the sense that it was produced at the track and that now there's a new product that looks like that looks like it's produced by your plaintiffs but it's not it's a different product yes what does that product consist of and maybe this goes back to judge sutton's question but what does the product consist of if it's it's a prior race that that's a that is a fact i mean this claim this case is not about them telling people that this was the race at at churchill on this day or whatever and these are the results and it's not true i mean so what's the product that is no that's and and you're not saying that there's confusion in whether that video is real or not so what is it it's whether the when the consumer sits down at that station to play that game and sees that video is the consumer thinking oh it's very clear that this is coming from exacta and has nothing to do with oaklawn or is the consumer thinking oh oaklawn generated a computer version of it's the results of its race or generated data from which a computer version can be created doesn't win every single race does it well i mean it doesn't it's not the venue for every single i'm using that as example you're on different every time the customer plays is apt to see a different venue so why would he think oaklawn for example had anything to do with it because oaklawn is the name that's placed on the particular video they're looking at and so this is analogous to people come in and bet once well in a simulcast scenario where someone's at a parlor and viewing a number of different races taking place at a number of different tracks they may wager on an oaklawn race and watch that video which says oaklawn but they look different when it's the real race they look different and and i i understand i i see that there's a confusion there the the point isn't uh is this real or not the point is is this thing this video that i'm seeing being sponsored by the venue sponsored or created by the venue yes your honor how could it be if they all look exactly the same well they don't because the results are different no but the horses have reenactment that's they're all look the same do they have different i mean are they wearing are the jockeys dressed differently do some of them wear you know one stables colors and then the next day they're they're all generic correct but the question is really again trademark law is broader than just is this whole system mine trademark law is all about sponsorship all about affiliation all about where the data underlying is coming from so another hypothetical would be what if someone's sitting why don't you why wind up more quickly than a hypothetical mind okay understood um i guess where i would end is to say um the the confusion that we're complaining of is not confusion about whether the video is real or not but rather whether given the history of this type of material always coming from our clients whether it's coming from the venue whether it's coming from the venue did you say to the judge this is inappropriate don't rule now there really are i mean we've pled inadequate claim there really are issues we have people who are going to testify to confusion we weren't given permission to have oral argument on this issue i certainly would have said that and we certainly said it in the briefing okay thank you thank you very much may it please the court my name is spiro barabasco so i'm here on behalf of exacta systems mr william hoskins is here on behalf of kentucky downs i'm going to do the argument if you have any specific questions for kentucky downs i may defer to mr hoskins otherwise i'm here to well stay in our position to answer your questions it does seem rather unfair that you can get around whatever copyright laws put you in the position of having to get licenses say this is just historical and then do these simulations that look like a horse race and put their name down i mean why don't you have to just say louisville or lexington or some other santa anita why don't you your honor that you get to use their name and make it sound like and take advantage of these races your honor that's answered by the supreme court's decision in feist publications versus rural telephone facts are not protectable that's that's basically what the supreme court said in that case and two companion cases i would cite you to is cbc distributing distributed men uh versus major league baseball and uh cbs versus nfl players but all of which are cited in our brief these are situations where sports teams feist is about telephone books and people's telephone numbers and basically the complaint was um uh the former telephone company said well you can't copy our telephone directories because we put all this effort into collecting all these facts and the court said no no these are facts anybody can collect you can make a telephone book in the other two cases there are major league baseball case and nfl players case are situations where people were using the names of players from the nfl and major league baseball they were using their statistics and to do for example fantasy football and things like that and the courts basically said look these are facts you're free to use facts happen with purely factual reenactments of football superbowls where it's animated so it's you know no one would look at it and think that's that's someone's video of what really happened in 1969 so what it is is it's animated and you get to watch the whole game and the producer of it doesn't have to pay anything to the nfl or the teams and that would be defended under copyright law if if that was considered to be an unfair use of the copy underlying copyright information however that would be problematic though but however it would yes it would be problematic it would be yes however it would not be a problem if i reported the finish of the game that the patriots won on a field goal why don't you just do that that's what we do do your honor i thought there is this reenactment it's three seconds it's just the finish of the race we just show the horses as they're crossing the finish line for three seconds and the reason we do this is not because we're trying to trade off of their rights it's because the government of the state of kentucky the commonwealth of kentucky has ordered us if you're going to understand let me take a step back so you understand what these machines are they're a machine hopefully the court has some experience with slot machines they look like a slot machine exactly what do you what are you accusing us of no i'm not accusing you of anything your honor but they look like a slot machine and they're played in a very similar fashion basically the people walk up there if you look at the only evidence that's really in front of in the case which is the exhibits to the back of the complaint there's a series of screens you can see and it's on page 158 and it shows you the series of screens that the patron would would see as they walk up to the machine the top screen is the last screen they see when the wager is actually accounted for the earlier screens give them the basic information they need to make to place the bet the horse racing is not shown in the earlier screens they have no idea what horse race they're betting on is the finish accurate i know it's accurate in the sense of who won and lost but is are the horses in the right lane and and the distance you know you won by one and a half lengths and that's actually just what it looks like one and a half lengths it to some extent there's there's in what sequence whether that if for example one horse beat one by six lengths there's not enough room on the video to to do all that so why do you but the the law requires that you inform the wagerer of the location and the results historically why do you need a video because the law requires that as well what does it say the kentucky horse rating horse rating commission requires that there be a video reenactment as part of this that's part of the regulations accuracy that is i don't know what what the reason is they did it but they did it that way and just at the just to the finish yes and recently what happened is there was an argument in kentucky that we went through as to whether it had to be live video or not live video maybe they wanted to protect them maybe that was the idea and kentucky said you can do it with a with a reenactment like ours you don't have to have live video what's really if you want to know what's really going on here i don't know how much outside of a motion dismiss record i can get into but this is one case among many between these parties what's really happened is these people had these machines at kentucky downs and then they had a breakdown in their relationship and kentucky downs brought in exactus machines and these people have sued us for patent infringement for example we've gotten their patents dismissed i've got another argument in a week in front of the federal circuit in washington dc on that dismissal so this is a skirmish in a in a broader war they are basically trying to stop us from competing with them in the area of horse historical horse racing machines they'd be happy to license it i'm sorry i'm sure they'd be happy to license it uh actually that's that's a question i think that with what the actions they've taken thus far they just don't us to be in the business that the track owners not all the track owners your honor in fact to answer a question you said earlier on our brochure none of the tracks are listed that they represent are listed in our brochure that if you look at the brochure the tracks we've got on the brochure are mountaineer casino uh rockingham park and turf paradise and none of those three tracks are in this case that's what's on our brochure so when a customer let me give you the customer experience the customer walks up to the machine knowing they're basically going to play what's a quasi what they view as a chance to bet at a machine and it's a more like a slot machine experience because it happens rapidly you put your money in you're given anonymously the uh the array of possible bets you can make you select your horses and then you push and you push go what happens next is you get a little quick three second video in which the kentucky requires us to do that and we're required to put location your honor one of the things that he said time to handicap the race sure you can sit and you say it's rapid fire i mean you could a lot of customers just don't bother to do the handicapping they just they do the automatic feature but if you wanted to as a customer sit back and handicap you can sit there and take your time and handicap it but what i'm saying about is the reenactment only happens for three seconds at the very end after you've already placed your bet your money's in the machine and and you don't know which track you're going to get up front kentucky horse rating horse racing commission in other words why did we do this your they have had a chance i mean if the if the dispositive issue in this case is likelihood of confusion why should they not have had a chance to show that to present a case on these are consumers who were confused and then you say that's not realistic and you bring in other people who weren't and the judge weighs it and says is that really plausible and then your honor the twombly and ick ball cases out of the supreme court have basically in in my experience shifted the analysis they basically say look if you're going to bring a complaint you don't bring it on in a conclusory basis and say there's likelihood of confusion and therefore do something court you have to plead specific facts and these facts mr brophy just gave you about the about the quote experience of the customers are nowhere to be found in the record are you saying that a claim for copyright infringement has to feed specific people or consumers who were confused that has to be in the complaint in a trademark case you would have to give some background supporting yeah you'd have to that's right you have to give some background supporting why you think there's likelihood of confusion the complaint it can't merely be possibility probability of confusion but now under twombly and ick ball you have to have some facts that support that in order to if or for the complaint to survive correct and now i want to ask a question about kind of where things fit in the analysis i mean we've got a case about what we've got an issue about whether this is a bit of trademark use in the first place right and then we've got a fair use uh argument if i i'm not sure that that um i have this entire i'm not sure i have everything that might be considered in the right box is all the stuff about whether it's merely descriptive or merely the relay of a historical fact i.e that race did occur at that venue is all of that stuff only a part of the fair use analysis or does it figure into whether it's a trademark use in the first instance it figures into both i'd say your honor uh i've read the cases and it is hard to delineate that one concept is a non-trademark and the other is fair use my understanding is this yeah tell me in a non-trademark the court looks at it and says to me that's a non-clear that's a clear non-trademark fair use we're done we don't have to spend time and money uh on on discovery and experts and all the rest i can dismiss this case if for any reason the court has a doubt that there might this might generate a small some small amount of confusion because the likelihood of confusion standard doesn't say there will absolutely be no confusion it's because you can't everybody you're going to find some people who are going to be confused but the likelihood of confusion standard basically says we decide there's going to be too much possible confusion we're not going to allow that and the fair use standard kind of stands in the middle and says well we see where there might be a little bit of confusion but in in total when you look at the the interests of the public and and free speech and what have you versus the interest in the trademark owner that small amount of confusion is not a big deal and the um alleged infringers actions were in good faith there has not been a single fact pled that we were in bad faith in fact the only facts the district court found was the kentucky horse racing commission's rules are you got to have a little reenactment you got to put the location and you got to put the date of the race now your honor in response to your question if i said the late the race was in louisville kentucky what if i told you the race was in santa anna california do you know maybe you know what the track is what if i told you is in rockaway new jersey to me the people just like he said these gamblers are people who understand horse race betting that's one of the things that's missing in this we're not talking about people who've never been on a horse race most of the people who bet here and when you bet on a horse race when you get that little ticket that i bet on a horse race guess what it has on it it has the name of the track it has the number of the race and the date that's just how they communicate in this business is there a possibility that for some of the venues that the name of the city doesn't adequately denote where it took place because there might be more than one racing venue or i don't know that everybody really knows the horse racing who get the newspaper the newspapers there's a great example they give you the names of the track which the judge referred to in his decision judge stivers did he said this is like what you see in the newspapers the name of the track the name the number of the race and the date and that's how you keep track of things why would betters use your client's product rather than what i understood to be client product number three where it's you get to vet bad and historical race but then you watch the video the real video of the whole race why wouldn't people always do that isn't that i think the reality is your honor is i think a lot of a lot of the people who are going up to these machines are not interested in sitting there for an hour of a minute and a half watching the race they're interested in finding out did they win or lose their bet i think there are a number of people who may feel that way about it because they i've seen these people playing these machines and they play them fairly rapidly and they do have a function where you can skip the um the choosing but there are some people who sit there very studiously and you know go through the odds and pick their race and but i think uh the kentucky horse racing commission does not require us to play the whole race and so we just have to play the finish and if the kentucky to answer your question your honor if the kentucky horse racing commission did not require us to put this information in the machine in order to be because we can't put these machines in without their approval that's the the problem here if we don't have their approval we can't do this and so i don't know if the kentucky horse racing commission would say if i simply put rockaway new jersey if that's going to be enough to identify to the person where the race was it's much better to to say one of the track names because that's the that's the way people talk in this industry what if they had required that you have actual video i mean they can't authorize you to violate the other party's rights you're right they can't do that but they did not require that and then maybe i misunderstood the facts is his actual historic is betting on actual historic racing with the actual replay available at these venues as well uh no it is not okay so your option is the venue where you are simulcast from other venues that are actually racing that way that day and this or is there another option uh i believe these are the three options you can if there's a real horse race going on which is really what the services are they are providing right um you can go bet on that simulcast means there's a real horse race going on at another track and of course when i get a simulcast ticket it tells me the name of the track so but the only thing here but they're also getting money they're sharing the pool but they're not licensing the trademark rights but aren't they sharing in the pool they're getting money but not because of trademark rights they're getting money because they're giving the video right right okay but so but this is the only historical racing at these venues correct at the at kentucky downs at least is the only one but we replaced it with this system because they got into a contract dispute okay your time is up thank you thank you your honor i think it's very important to step back pardon me and and look at where we are in this case we're not after a trial we're not at summary judgment we're at a rule 12 dismissal and what did you have in your complaint supporting the likelihood of confusion we alleged a number of things use of the video appending our name to the video the fact that that appending of our name and showing that video with our name uh indicated a source of confusion because of complaint uh related to that the the district court's decision didn't find that our pleading was insufficient that's not what's up on appeal here the only issue up on appeal at this point is is this a trademark use and if so does fair use apply i'm looking at i'm looking at the trademark infringement section of your complaint and in order for it to do anything other than allege you know a likeliness to cause confusion it's got to be tied to some factual allegation earlier in the complaint because it's certainly not in the trademark infringement section on page eight so where would i look to find the factual allegations with respect to likelihood of confusion i don't have with me at this moment your honor um but for example we allege that they do show the video we allege that they do append our name to that no no but but the appending of the name in and of itself does not show a likelihood of confusion and i believe that your adversary would have been correct under the current pleading standards that there's got to be something other than the legal confusion than the than the ultimate conclusion ultimate legal conclusion pled and so i'm asking you simply what facts in addition to the fact that your name is used would support a likelihood of confusion uh i'm sorry i'm having trouble because that's not one of the issues that we're up on appeal on uh but but well i mean you're on an appeal from the dismissal based and and it's correct that the district court didn't talk about uh tromley and iqbal and sufficiency but he did talk about the sufficiency of your complaint and we can analyze it in whatever way seems best to us but you would say the video with with your another one that is correct though the the allegation of of trademark infringement here and the likelihood of confusion arises from the affixation of our trade name on a video it's just the name it's not anything else it's well it's the affixation of the trade name on a video that is not ours but that purports to be from our racetrack and it's also the alley it's really not the use of your name it's the fact that your name appears in the video i thought your name appeared like somewhere over here after as the video concluded to show where the race occurred the our name is is literally placed onto the video as it's shown just the way that in old simulcast you'd have the real video with only the it's not the use of your name it's the placement of the name on on the video it's the use of our name in the particular way they're using it so they're using our name and that's that's what i wanted to get to is we have to look at this in the script that had been the answer to the initial question about why is this any different from printing the uh name of your client as a location in the newspaper would that have been the answer it's it is it is part of the answer your honor yes but that wasn't i didn't hear anything about that earlier i'm sorry then i didn't communicate well my apologies i i guess if if i could just i know i only have a minute left the most important thing for you to understand from my perspective is the questions that are before this court are is this use a trademark use and to answer that question you have to ask is our mark being used as an identity for source the answer is unquestionably yes exactus says that in their briefing they say they're using our name to designate the identity yet to identify the source of the trademark use question is a legal question wouldn't you say at the end of the day i mean because we could decide well yes we get the point but it's an historical fact and that's that's legal so that's not a 12b6 problem the the the trademark use question i believe is a i don't want to say anything that's wrong because i don't know whether it also includes underlying factual questions um i don't i guess my my reaction is it's much more of a legal question than the likelihood of confusion point that is certainly true your honor yes but but if if as is the case here this is a trademark use this is not like any other cases where you're using the trade name to designate the source of the races that they're showing it is a trademark use and so the the district court's decision that this was a non-trademark use is not correct for that source of the information the source of the races yes but that's the same as in a newspaper i mean that's the historical fact right and that's so that is that is a trademark use then the question under the sixth circuit framework is apply the likelihood of confusion factors to determine whether in this instance it's an acceptable use of the trademark or a an unacceptable use of the trademark but in order to do that you have to look at the likelihood of confusion factors which has not taken place here yes but before you got to that let's assume you concluded this was the trademark use you've still at this juncture got to figure out whether fair use bars the client from proceeding further that is correct your honor what i would say about that is in the sixth circuit there is only one type of fair use and that's classic fair use and there are two important requirements for that classic fair use number one it has to be a use of the mark in its descriptive sense apple is a fruit not apple is a computer here they fail that test because they're using our trade names as a designator of source not in their descriptive sense and number two the fair use also requires um i'm sorry we'll figure it out sorry thank you okay thank you your honor we appreciate the argument that both of you have given and we'll consider the case carefully thank you very much